No. 22,027.

STADDEN S. HART et al., *Appellants,* v. THE CITIZENS NATIONAL BANK, *Appellee.*

### SYLLABUS BY THE COURT.

WILL—*Trust Fund—Breach of Trust by Trustee—Action to Recover Fund by Beneficiaries—Barred by Statute of Limitations.* A testatrix devised and bequeathed property to a trustee for the benefit of her grandchildren. The beneficiaries were minors, and were not to receive the trust estate until they reached the age of twenty-five years. Until that time the trustee was vested with title and with full power and discretion respecting management and disposition of the trust property. A portion of the property consisted of bank stock, which the trustee disposed of to the defendant, under such circumstances as to constitute a breach of trust, in which the defendant knowingly participated. Afterwards the trustee resigned, and another trustee was appointed, who became vested with the same title and authority as her predecessor. She suffered her right of action to recover the bank stock, or its proceeds or value, from the defendant, to become barred by the statute of limitations. *Held,* subsequent action by the beneficiaries, after they became of age, against the bank for the same relief, was barred.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed November 8, 1919. Affirmed.

*J. I. Sheppard, James G. Sheppard, Kate Sheppard,* all of Fort Scott, and *John B. Hart,* of Seattle, Wash., for the appellants.

*John H. Crain,* and *A. M. Keene,* both of Fort Scott, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for relief by beneficiaries of a trust, regarding bank stock belonging to the trust estate which the trustee disposed of to the defendant. The plaintiffs were defeated, and appeal.

The will of Nellie D. Stadden devised and bequeathed one-third of her estate to her son, Leo. I. Stadden, one-third to her daughter, Lillian M. Prager, and one-third to Leo I. Stadden as trustee for the testatrix's grandchildren, the plaintiffs, who were children of a deceased daughter, Nellie Stadden Hart. The beneficiaries were minors, and were not to receive the trust estate until they arrived at the age of twenty-five years. Until that time, the trustee was vested with title, and with power and discretion over management and disposition of the estate, as complete and absolute as language could express. The following clause of the will related specifically to property of the kind in controversy:

"My said trustee is also empowered to continue to hold any and all stocks coming into his power as trustee and receive the dividends therefrom, or to sell the same and loan or invest the proceeds from such sale as to him may seem best and proper."

The trustee duly qualified, and entered upon administration of the trust.

The husband of the testatrix was a wholesale grocer. After his death the business was incorporated as the I. Stadden Grocery Company, the entire capital stock of which was subscribed by the testatrix and her children, Leo Stadden and Lillian Prager. The testatrix used the grocery company very much as other people use a bank, for the purpose of depositing and withdrawing funds. A part of the assets of the trust estate consisted of a share of a large credit which she had on the books of the grocery company at the time of her death—and it may be said that the grocery company was considered to be as sound financially as the defendant bank itself. A part of the personal property disposed of by the will consisted of shares of stock of the grocery company and shares of the capital stock of the defendant bank. By virtue of a division of property between the legatees named in the will, shares of grocery company stock and shares of bank stock were set off to the trust estate, and on application of the trustee, the defendant issued a certificate for twenty shares of its capital stock to "Leo I. Stadden, trustee."

The grocery company was indebted to the bank. The president of the bank desired the indebtedness reduced, and in order to do so, in February or March, 1902, Leo I. Stadden, trustee,

indorsed in blank and delivered to the bank the certificate which had been issued to him, at its par value of $100 per share. The bank gave the grocery company credit on its indebtedness, and the trustee's account with the grocery company was given proper credit. The bank continued to own the stock until July or August, 1904, when it was disposed. of to purchasers for value, and, assuming the present action to be well grounded, it was not possible for the plaintiffs to recover the identical shares. Some of the facts just stated are disputed, but for the purpose of the decision, the plaintiffs' version of what occurred is accepted. It is also assumed, as the plaintiffs contend, that the bank knew the fiduciary capacity and relation in which Leo I. Stadden held the certificate.

Leo I. Stadden resigned as trustee in May, 1902, and his sister, Lillian M. Prager, was duly appointed in his stead. She qualified as trustee, and became vested with full title to the trust estate, and vested with all power and discretion over it conferred by the will. Because the bank stock had been disposed of by her predecessor, it did not come into her possession, but there did come into her possession as part of the trust estate a large credit to the account of the trustee on the books of the grocery company, composed in part of the proceeds of the sale of the bank stock. Evidence for the plaintiffs indicated that Lillian M. Prager knew the bank stock had been applied on the grocery company's indebtedness to the bank about the time the transaction occurred. Her husband, William Prager, was then secretary and treasurer of the grocery company. He transacted all, or substantially all, of his wife's business as trustee. Immediately after her appointment, Lee Hart, father of the plaintiffs, who was then living, told William Prager that Leo had disposed of the bank stock, and it would not be among the things turned over. William Prager was informed that the bank stock went to the credit of the children on the books of the grocery company, and if Lillian M. Prager did not, as she testified, personally know the fact at the time, she was charged with knowledge directly after she became trustee.

On May 26, 1902, the grocery company sold its merchandise, went out of business, and proceeded to wind up its affairs. The trustee did not attempt to recover the stock from the bank,

or attempt to recover its value from either Leo I. Stadden or
the bank, and the value of the stock was not realized from the
credit on the books of the grocery company. In April, 1916,
the beneficiaries commenced this action on their own account.

The district court did not make findings of fact, and the
basis of its judgment can only be surmised. Under the well-
understood rule, the judgment includes a finding of all facts
supported by evidence and inferences from evidence favorable
to the defendant which will sustain the decision on any legally
tenable theory.

About the time this suit was commenced, Lillian M. Prager
asked to be relieved as trustee. The beneficiaries intervened
in the proceeding, and charged her with various derelictions of
duty, whereby the trust estate had been greatly depleted, to
their detriment. The matter was tried, and the court made ex-
tensive findings of fact, covering administration of the trust
from the time it was created, including the bank-stock transac-
tion. The trial followed the trial of the present action. The
two cases were taken under advisement, and were decided on
the same day. With reference to the bank-stock transaction,
the court, in the matter of the trusteeship of Lillian M. Prager,
made the following finding:

"In thus using the capital stock held by him as trustee in reducing the
indebtedness of the grocery company to the bank, and of increasing the
indebtedness of the grocery company to himself as trustee, Leo I. Stad-
den acted in good faith, without any intent to injure or endanger the
trust estate, and in the honest belief that the change of investment of
this portion of the trust fund was the best thing to do under the cir-
cumstances, and would not result in any loss to the trust estate; and I
find that in so doing he was guilty of no act which would render him
responsible for loss, if any occurred, and that he was exercising fairly
and honestly his judgment and discretion in the handling of the trust
estate, in accordance with the power conferred upon him by the trust
instrument."

It is likely the decision in the suit against the bank was
rested on a similar finding, not formally stated. However
this may be, substantially at the close of the evidence in the
bank's case, leave was asked and granted to amend the answer
to raise the bar of the statute of limitations. The application
was resisted, and the ruling permitting the answer to be
amended is assigned as error. The subject was clearly one
within the discretion of the court. All the facts had been fully

developed.   Nothing additional was offered, or indicated as available, which would affect the starting or the running of the statute of limitations, and the plaintiff suffered no legal prejudice from the amendment.

Assuming that in disposing of the stock to the bank the trustee was guilty of a breach of trust, and that the bank, having knowledge of the breach, and participating in it, became itself trustee *ex maleficio* of the stock, the present action by the beneficiaries was barred.   After the spoliation occurred, a new trustee was appointed.   As soon as Lillian M. Prager qualified as trustee, she took title to the trust estate, and became vested with all rights of action pertaining to the trust and trust property.   The beneficiaries had no title to the trust property, no control over it, and no right of action growing out of its management and disposition.   The new trustee had a complete, matured cause of action against both her unfaithful predecessor and the bank for *devastavit,* and a variety of remedies were available to her.   She alone could pursue them, and she neglected to do so.   After the lapse of three or five years—it is not material which—she became barred, and when she became barred the beneficiaries were barred, although they were then minors.

"The general rule is that whenever the right of action in a trustee who is vested with the legal estate and is competent to sue is barred by limitation, the right of the *cestui que trust* is also barred; and this rule applies whether the *cestui que trust* be *sui juris*, or under disability during the period of limitation." (25 Cyc. 1010.)

The plaintiffs cite the following text relating to persons between whom the statute of limitations is operative:

"The general rule is that for a trust to be exempt from the statute, not only must it be an express trust cognizable solely in equity, but the contest or·suit involving it must arise between the trustee and the *cestui que trust*.   But this rule is not always strictly adhered to, and is subject to numerous qualifications.   Thus it has been held that a third person who knowingly participates in a trustees's breach of trust is no more entitled to avail himself of the statute than is the trustee. Where property having been held under an express trust comes into the hands of a third person having notice of the trust, it is held in some cases that the third person occupies the position of an express trustee and is not protected by the statute; although in other cases it is held that he is merely a constructive trustee and that the statute applies in his favor, especially where the trust funds may be recovered in an action at law." (25 Cyc. 1165.)

All the decisions cited as qualifying the general rule of the text have been examined. It would unduly extend this opinion to review them. In this state there is but one form of civil action, whether the right to relief be legal or equitable in its nature, and all actions, whether such as were formerly denominated actions at law or suits in equity, must be commenced within the periods prescribed by the statute of limitations. The declaration that a third person, who knowingly participates in a trustee's breach of trust, is no more entitled to avail himself of the statute than the trustee, is altogether too broad, and its indiscriminate application would lead to abrogation of the statute of limitations in many cases to which it was designed to apply. In this state express trusts and constructive trusts arising by operation of law are wholly distinct in origin and nature, and to identify them for any adventitious purpose would lead to confusion. Probably as clear a statement of the principle involved as the court's own investigation has revealed appears in a case cited in connection with the text quoted, in one of the volumes of annual annotations to Cyc.:

"One who knowingly takes title to property which is subject to a trust, himself becomes a trustee *ex maleficio,* and will have to account to the beneficiaries or *cestuis que trust* for such property. The statute of limitations does not run against the beneficiaries under legal disabilities simply because it has fully run against their trustee who has conveyed the legal title to the parties sued by them, and who took with full knowledge of the trust impressed upon the property. So that where certificates of stock were issued to a mother as trustee for her children, and defendants bought the stock from her, with full knowledge of such trust, a suit ten years afterwards by the children, who because of legal disabilities are not otherwise barred, is not barred as to them. The principle that when the trustee is barred all the beneficiaries, whether under legal disabilities or not, are barred, has no application to such a case. That principle applies only where the trustee could sue, but fails to do so." (*Elliott v. Machine Co ,* 236 Mo. 546, Syl. ¶ 3.)

In the present instance, after the *locus pœnitentiæ* had been passed, Leo I. Stadden, as trustee, could not sue the bank, because he was estopped to dispute the vesting of title which he had transferred. The bank, however, having knowledge of the trust and its breach, was prevented from taking title stripped of the trust. The relation of the property to the trust estate was preserved by making the bank a constructive trustee by operation of law consequent upon its own wrong. If noth-

ing else had happened, when the time came for the beneficiaries to call for an accounting, and for delivery to them of the trust property, or its proceeds or value, they might have recovered from the bank, notwithstanding lapse of time. But something else did happen. Another trustee came into office, clothed with the right and charged with the duty to call upon Leo I. Stadden and the bank for an accounting, and for delivery of the trust property, or its proceeds or value. Her authority in those respects was precisely that of adult beneficiaries at termination of the trust; and nobody would contend that, after termination of the trust, adult beneficiaries could delay assertion of their rights beyond the period fixed by the statute of limitations. The new trustee neglected to bring action against the bank, her right of action became barred, and in that respect the plaintiffs stand in her shoes. Their remedy lies in calling the second trustee to account—but that is another story.

The judgment of the district court is affirmed.