200 So. 554

## SPANN v. FIRST NAT. BANK OF MONTGOMERY.

### 3 Div. 316.

Supreme Court of Alabama.

Feb. 20, 1941.

Bernard Lobman and Alex C. Birch, both of Montgomery, for appellant.

Steiner, Crum & Weil and Sam Rice Baker, all of Montgomery, for appellee.

542

GARDNER, Chief Justice.

The bill discloses that in 1922, Nora S. Dimmick was duly appointed and qualified as guardian for her brother, John E. Spann, a non compos mentis, whose estate consisted of funds from "War Risk Insurance Benefits" and "Disability Compensation Benefits". In the years 1926, 1927 and 1928 said guardian invested such funds for her ward, by a purchase from the First National Bank of Montgomery, in First Finance Corporation collateral trust gold notes, each payable at the office of said bank and bearing interest payable semi-annually at the rate of six per cent per annum.

The First Finance Corporation was a private corporation, an affiliate of, managed and controlled by, the First National Bank. The averments are meager as to the exact nature of these gold collateral notes, nor what, if any, value they possess. It is alleged, however, that these notes come within the class of investments prohibited by our State Constitution, § 74, and our statute, § 8149, Code 1923, a matter which the trust officers of the First National Bank should have known, and that such securities were purchased by the guardian on advice of said trust officers who knew the nature of the funds being thus invested.

The bill is filed upon the theory of a rescission of these transactions, containing an offer to restore the securities thus purchased, and seeks to have the defendant bank held as constructive trustee of the funds paid to it for such purchases, and to be made to account therefor with interest from the date of each such transaction. The bill is filed (November 7, 1939) in the name of the non compos mentis, John E. Spann, by his guardian and next friend, Nora S. Dimmick, who was his guardian when these investments were made and who continues as such guardian.

One of the grounds of demurrer sustained by the Chancellor was that the said guardian was a necessary party to this suit. The bill is not filed for recovery of any specific property or to fasten any lien thereon, or distribution of assets of the estate of the ward, nor does it contain any matter which affects the relationship between guardian and ward.

It merely seeks to fasten a pecuniary liability upon the theory the bank has received money, which in good conscience belongs to the ward, and is trustee of a constructive trust. Such a suit may be maintained at law. American Bonding Co. v. Fourth National Bank, 205 Ala. 652, 88 So. 838. Such being the character of this suit, the guardian was a necessary party. Silverstein et al. v. First National Bank, 231 Ala. 565, 165 So. 827; Adler et al. v. First National Bank, 233 Ala. 325, 171 So. 904; Kelly v. Wilson et al., 234 Ala. 455, 175 So. 551.

And indeed in these authorities the holding was such suits were maintainable by the guardian with no necessity that the ward be a party thereto. Counsel for complainant argue, and correctly so, that the title to the property is in the ward. 28 C.J. 1128; Longmire v. Pilkington, 37 Ala. 296; United States Fidelity & Guaranty Co. v. Montgomery, 226 Ala. 298, 146 So. 528.

The case of Kelly v. Wilson, supra, cited by defendant, holds nothing to the contrary. There the mortgage security was taken in the name of the guardian as such and in instances of that character the legal title is as there designated. The opinion notes 28 C.J. 1128, wherein is the statement: "Where a guardian takes an obligation running to himself as such, although it represents property of the ward, the legal title to such obligation is in the guardian". Complainant, therefore, insists that as the title to property is in the ward the suit is properly brought in the name of the

ward and the guardian not a necessary party thereto. Reliance is had upon West v. West, 90 Ala. 458, 7 So. 830; Amann v. Burke, 237 Ala. 380, 186 So. 769; Kelen v. Brewer, 221 Ala. 445, 129 So. 23; Wallace v. Montgomery, 226 Ala. 25, 145 So. 419, and cases of like character. But these authorities concern some property right of the ward or cestui que trust and where the matter of title was of more or less controlling influence.

As observed by the Court in Amann v. Burke, supra [237 Ala. 380, 186 So. 770]: "if the purpose is to secure their property rights in equity, persons of unsound mind and minors as well as adults, must be made parties". And in Kelen v. Brewer, supra [221 Ala. 445, 129 So. 25], with particular reference to West v. West, supra, the court said: "We suppose the rule of the cases referred to must now be followed, at least in cases in which the decree sought will conclude the minor in his property or estate".

But the present suit involves no property right or estate of the ward. Reduced to the last analysis, it is but a suit to collect an indebtedness owing by the defendant bank by virtue of its relation as a trustee of a constructive trust. An action at law for money had and received would serve the purpose. American Bonding Co. v. Fourth National Bank, supra.

■ Under these circumstances Sections 5689 and 5707, Code of 1923, are to be given effect as disclosed by the cases of Silverstein v. First National Bank, supra and Adler et al. v. First National Bank, supra. The instant case involves only the power and duty of the guardian in the administration of the ward's estate. "It is the settled law of this state that a guardian has the power to dispose of the personal estate of his ward, including the transfer of choses in action, without an order of court". Bank of Guntersville v. United States Fidelity & Guaranty Co., 201 Ala. 19, 75 So. 168, 169; Echols v. Speake, 185 Ala. 149, 64 So. 306, Ann.Cas.1916C, 332.

■ It is, of course, the duty of the guardian to collect any debt due the estate of the ward, and having notice of such a debt is chargeable with the amount thereof if lost through his negligence. Kelly v. Wilson, supra. Such a duty carries with it a corresponding power to perform it, upon the familiar principle that the means must be adequate to the end to be accomplished. "A trustee is clothed with the legal title whenever it is necessary to enable him to execute a trust created by law; and hence, it being the duty of a guardian to collect all debts due to his ward, he may maintain an action in his own name to enforce the collection of a note payable to his predecessor 'as guardian' for the ward" [234 Ala. 455, 175 So. 552].

Presumably, of course, the guardian has all along had in her possession the notes purchased by her from the defendant bank and in position to tender the same for rescission of the entire transaction, assuming, as we have in this opinion, that the purchase of these notes came within the prohibition of our laws. White v. White, 230 Ala. 641, 162 So. 368.

It may be here further observed that the fact the funds so invested were war risk insurance, or disability compensation benefits paid by the United States government, is without influence so far as this litigation is concerned. Robinson v. Williams, 229 Ala. 692, 159 So. 239, and authorities therein noted. The bill, therefore, presents a simple case of a guardian investing innocently, though illegally, funds of the ward, which transaction she not only had the power to rescind and recover the funds thus invested but had resting upon her likewise the duty to do so. And under the authorities herein noted the guardian alone may well maintain such suit.

■ The right of action in the guardian arose upon receipt of the money by the defendant bank and could well be sustained at law in a suit for money had and received. The statute of limitation of six years, Code 1923, § 8944, was therefore applicable as to any such action by the guardian. American Bonding Co. v. Fourth National Bank, supra; Sec. 6522, Code of 1923. "Whenever the subject matter of a trust can be sued for at law, the statute of limitations may be insisted on as a bar, although the remedy is pursued in a court of equity." Maury's Adm'r v. Mason's Adm'r, 8 Port. 211. And it is well established that a constructive trust is within the operation of the statute of limitations. American Bonding Co. v. Fourth National Bank, supra.

■ The first of these investments was made fourteen years, and the last twelve years, before the filing of this bill. During these years the guardian presumably retained the securities thus purchased or their equivalent, receiving whatever bene-

544

.fits accrued therefrom, and making no complaint nor effort to rescind the transactions. It thus appearing on the face of the bill that as to the guardian the cause of action is long since barred, it became incumbent upon the pleader to aver facts which would take the case from without the statute or excuse so long a delay. Scruggs v. Decatur Mineral & Land Co., 86 Ala. 173, 5 So. 440.

 The argument is that complainant is now and through the years has been non compos mentis and that this suffices to show the statute of limitation is inapplicable. Sec. 8960, Code of 1923. But we have shown that the guardian was fully capable of bringing suit and was in fact the one upon whom the duty primarily rested to prosecute the action. In harmony with the current of authorities elsewhere (37 C.J. 719; Restatement of the Law of Trust, Sec. 327; Scott on Trusts, Vol. 3, Sec. 327; Meeks v. Olpherts, 100 U.S. 564, 25 L.Ed. 735; Chase v. Cartright, 53 Ark. 358, 14 S. W. 90, 22 Am.St.Rep. 207; Hart v. Citizens' Bank, 105 Kan. 434, 185 P. 1, 7 A.L.R. 933), the principle is established in this jurisdiction that as between the trustee and a stranger the statute of limitations runs as in other cases, and if the trustee is barred the cestui que trust is also barred. Cruse v. Kidd, 195 Ala. 22, 70 So. 166, 20 A.L.R. 36. This question is fully discussed in Molton v. Henderson, 62 Ala. 426, where, speaking of this rule, the court observed:

"This is conceded to be the general rule, but it is argued that it should be taken subject to the exceptions contained in the statute of limitations, and as the cestui que trust was continuously non compos mentis, the rule cannot be applied. The proposition is not new, and though authorities may be found which sanction it, we are not prepared to follow them. The reason of the rule, the principles of public policy in which it has its foundation, and the weight of authority, English and American, forbid engrafting upon it such an exception. * *

"The character of the disability is not material. It may be infancy, coverture, non-residence, or mental incapacity. Whatever it may be, it must be an exception expressed in the statute of limitations. If it is not one of these exceptions, the courts cannot add it as an exception to those which the statute has enumerated. Nor can one exception be allowed a larger operation than another, because its subject may be more pitiable, and may appeal more strongly to our sympathies."

And in Lee v. Wood, 85 Ala. 169, 4 So. 693, the court observed: "As a general rule, statutes of limitations do not run against those laboring under a personal disability, such as infancy. * * * This rule, however, does not apply to infants, or other persons disabled, who have a trustee capable of suing".

 However, the general rule is inapplicable and the cestui que trust not so barred if the trustee is not capable of bringing the suit. And such incapacity may consist either of matter of fact or of law. These exceptions (if for convenience they may be so designated) are based upon reason and common sense. Illustrative of disqualifications as a matter of fact are those cases where the guardian or trustee has been guilty of fraudulent conduct against the ward's interest or some fraudulent collusion in reference to the ward's estate. Our case of Bradley v. Singleterry, 178 Ala. 106, 59 So. 58, presents a fair illustration. The facts are there distinguished from those of Lee v. Wood, supra, upon the theory that in the case there considered the guardian by his own fraud had disqualified himself from bringing suit or acting for the ward; the court observing: "The ward in effect was without a guardian to protect his interest in the subject-matter of this suit. There being no one qualified to represent the non compos, the principle stated in Lee v. Wood, supra, fails of application".

In Scott on Trusts, Vol. 3, page 1784, is found an interesting discussion pertinent to this question where the author points out that under the decided weight of authority where the transferee of trust property did not have actual knowledge of the breach of trust, even though chargeable with notice, such transferee is entitled to the bar of the statute of limitations. True the transferee takes subject to the trust, and subject to liability as a trustee of a constructive trust. But upon reason and authority where he and the trustee had no actual knowledge of the breach, and acted innocently, though illegally, the statute of limitations runs against the trustee and if barred as to him also bars the cestui que trust. The text finds support in the cited authorities as well, we think also in sound reasoning.

Concededly the bill in the instant case is to be construed as disclosing an innocent transaction on the part of both the guardian and the bank—the guardian acting under the mistaken impression she was making a proper and legal investment of the ward's funds and the bank concurring under like impression. There is no hint of fraud or collusion or wrong-doing, and of consequence no obstacle from any standpoint of fact or conduct standing in the way of an immediate rescission of the transactions by the guardian and a demand for a refund of the money of the ward thus invested. True both the guardian and the bank were chargeable with a knowledge of the law. But this does not suffice to show actual knowledge of an illegal investment.

Speaking to a like situation in Vol. 3, Scott on Trust, on page 1785, the author observes, with appropriate citation: "The same result has been reached where the trustee by mistake exceeded his powers in making the sale, and the purchaser, although he was chargeable with notice of the extent of the powers conferred upon the trustee by the trust instrument, nevertheless believed that the trustee was empowered to make the sale. In such cases it is held that although the purchaser took the property subject to the trust, yet if he holds it for the period of the Statute of Limitations, not only is the trustee precluded from maintaining a suit against him but so also are the beneficiaries although they were under an incapacity".

As previously noted, the general rule herein discussed is likewise inapplicable where the trustee was under a disqualification to sue as a matter of law. Our case of Hood v. Johnston, 210 Ala. 617, 99 So. 75, a suit in ejectment where the legal title in the ward must prevail, is illustrative of this latter class of exceptions to the general rule. Such a situation simply presents another case where the guardian was disqualified from bringing the suit—that is, the ward or beneficiary did not have a trustee "capable of suing".

It is clear enough there is here shown no such exception. The guardian all along not only had the power but was also under the duty to rescind the transactions and bring the suit. Not having done so, the bar of the statute of limitation of six years presents a bar to the suit by the guardian and likewise is applicable to the ward.

It results as our conclusion the chancellor correctly sustained the grounds of demurrer taking the points that the guardian was a necessary party to the suit and also that the bar of the statute of limitation was complete.

The decree is free from error and is here affirmed.

Affirmed.

THOMAS, BROWN, and FOSTER, JJ., concur.