MEYERS v. MEYERS.

4-7982

197 S. W. 2d 477

Opinion delivered November 18, 1946.

*Frank C. Douglas,* for appellant.

*W. Leon Smith,* for appellee.

ROBINS, J. This is a controversy between appellees, Max Meyers and Adolph Meyers, children of Joe Meyers, deceased, and their stepmother, Annie Meyers, the appellant, as to liability of appellees for certain shares of corporate stock delivered by appellant to appellees. To appellant's suit for an accounting as to these stocks, which appellant alleged appellees were holding for her as her trustees, appellees answered that appellant and appellees had made a compromise of the liability asserted in this suit and all other matters in dispute between them, said compromise being evidenced by a written agreement. Appellees also pleaded laches and limitation as additional defenses.

The lower court dismissed appellant's complaint for want of equity. She has appealed.

Joe Meyers died in 1930, leaving surviving him the appellant, his widow, and five children now living, as his heirs at law, to-wit: His sons, Max Meyers and Adolph Meyers, appellees herein, and his daughters, Sophia Meyers, Mrs. Goldena Hassel and Mrs. Hannah Simon. No administrator was appointed for his estate until after this controversy arose. On the advice of appellees, appellant invested $5,546.88, proceeds of insurance on the life of Joe Meyers, payable to and collected by her, in certain stocks, and on June 13, 1930, at request of appellees, she indorsed the certificates evidencing her ownership of these stocks and turned same over to appellees and they gave her the following receipt therefor:

"Letterhead of Meyers Bros.,

"Cotton Merchants,

"Blytheville, Arkansas, June 13, 1930.

. "We hold in trust and receipt of Mrs. Annie Meyers —the following stocks:

"10 shares  Annaconda Copper,
"25 shares  Chrysler Corp.,
"25 shares  Montgomery Ward,
"50 shares  General Motors,
"20 shares  Grisby Gruno.

"(Signed)  Meyers Bros.

"By Max Meyers."

Appellees were in financial difficulties when they obtained the stock certificates and in 1931 they disposed of all these stocks, belonging to their stepmother, the appellant, and used the proceeds thereof to apply on their own indebtedness. They did not inform appellant that they had sold her stock, but, on the contrary, they continued to pay her every three months, up until about March, 1944, the amount of dividends regularly accruing on these stocks.

Appellees testified that from time to time appellant would ask them for the stock certificates, but that they evaded her requests in different ways. As appellee, Adolph Meyers, put it in his testimony, he "avoided the question one way or the other."

During all the years from 1930 to 1944 relations between appellant and all of her stepchildren were amicable and intimate. In the early part of 1944 one of the daughters of Joe Meyers learned that a diamond ring, that had belonged to her own mother, had been given by appellant to one of appellant's nieces. This discovery led to a serious quarrel between appellant and her stepchildren, who began to insist that the home place and two other parcels of real estate bought by Joe Meyers during his lifetime, title to which was placed in appellant, should go to them as heirs of Meyers, rather than to

kindred of their stepmother. The quarrel led to personal difficulties and to two suits—one brought by a daughter of Joe Meyers against appellant to recover certain furniture, and one, an injunction suit brought by appellant against her stepchildren to restrain them from molesting or threatening her. Appellant's stepchildren also had their attorney appointed administrator of the estate of their father, who had died 14 years before, and had served on appellant an order to make disclosure as to personal property belonging to Joe Meyers at the time of his death.

The respective attorneys for the parties worked out a compromise agreement, which was embodied in the following writing, signed and acknowledged by all parties on July 11, 1944:

"This stipulation and contract is entered into at Blytheville, Arkansas, on the 11th day of July, 1944, among Mrs. Annie Meyers, first party; and Max Meyers, Adolph Meyers, Sophia Meyers, Mrs. Goldena Hassell, and Mrs. Hannah Simon, second parties; and witnesseth:

"Mrs. Annie Meyers is the widow of Joe Meyers, deceased. Max Meyers, Adolph Meyers, Sophia Meyers, Goldena Hassell, and Hannah Simon are the children and the sole heirs at law of the said Joe Meyers, deceased. On May 19, 1944, at the request and direction of the second parties herein, W. Leon Smith filed in the office of the Probate Court clerk for the Chickasawba District of Mississippi county, Arkansas, an application for letters of administration upon the estate of Joe Meyers, deceased; and on said date letters of administration were issued to him by the clerk of said court, subject to the approval of the court. At this writing the court has neither approved nor disapproved the action of the clerk in issuing such letters of administration.

"Recently at least two suits have been filed in different courts of Mississippi county, in which Mrs. Annie Meyers was one party and some of the second parties named herein were adverse parties; and unless the parties succeed in compromising and settling their disputes, further litigation among them will unquestionably result.

The questions in dispute among the **parties hereto involve** certain real estate and personal property that is in the possession of Mrs. Annie Meyers in which property the second parties herein claim that they own some interest. All of the parties are desirous of compromising ,and settling their differences, and all of them recognize that such a compromise and settlement is very desirable. The parties do hereby compromise and forever settle all questions in dispute among them upon the following terms and conditions:

"Mrs. Annie Meyers hereby agrees that she will forthwith deposit with the Farmers Bank & Trust Company in the city of Blytheville, Arkansas, the sum of three thousand ($3,000) dollars, in cash to be held by said bank in trust for herself and second parties herein subject to the provision of a trust agreement of even date herewith, a copy of which will be attached to this stipulation and agreement and become a part hereof.

"In consideration of the agreements made and hereinafter made, Mrs. Annie Meyers hereby binds and obligates herself, her heirs, executors, administrators, assigns and successors in title that upon her death the title to the following real property now vested in her shall go to the second parties as tenants in common, owning equal interest with each other; that said property is described as follows:

"Lot one (1) in block three (3) of the Blythe Fourth Addition to the city of Blytheville, Arkansas.

"The west half of lot two and all of lot three in block thirteen (13) of the Chickasawba Addition to the city of Blytheville, Arkansas.

"A triangular lot located in the northeast corner of the southeast quarter (SE¼) of the northeast quarter (NE¼) of section sixteen (16), township fifteen (15) north, range eleven (11) east, which said lot lies south of the main line right-of-way of the Jonesboro, Lake City & Eastern Railroad Company and north and east of the right-of-way of the west leg of wye of Jonesboro, Lake City & Eastern Railroad Company, the land herein con-

veyed contains six hundred fifty-four-one-thousandths of an acre (0.654), more or less, lying in the Chicasawba District of Mississippi county, State of Arkansas.

"In consideration of the above agreements made by Mrs. Meyers, second parties herein consent and agree that the Probate Court for the Chickasawba District of Mississippi county, Arkansas, may and shall enter an order disapproving the issuance by the clerk of that court of letters of administration to W. Leon Smith upon the estate of Joe Meyers, deceased, and shall further order that there shall be no administration of the estate of the said Joe Meyers.

"For the same consideration each of the parties hereto who has filed or instituted any suit or action in any court against any of the other parties hereto now agrees that such suit or action shall be forthwith dismissed with the prejudice at the cost of the plaintiff in such action.

"For the same considerations, second parties hereby forever disclaim for themselves, their heirs, executors, administrators and assigns any right, title, or interest of any nature or kind in or to any property, real or personal, other than that which has heretofore been specifically mentioned that is in the possession of Mrs. Annie Meyers or title to which is vested in her.

"Mrs. Annie Meyers on the one part and second parties herein on the other part mutually covenant and agree with the other that henceforth they will leave each other alone and will never on any occasion attempt to induce or bring about any disposition of any property other than that which is hereby agreed upon and that they will at all times refrain from engaging in any discussion, argument or dispute among themselves to any matters whatever.

"In testimony whereof, the parties hereto have set their hands at Blytheville, Arkansas, on the date first herein written.

"Approved in behalf of Mrs. Annie Meyers
"(s) Marcus Evrard,
"Attorney for Mrs. Annie Meyers.

"Approved in behalf of second parties
"(s) W. Leon Smith,
"Attorney for Second Parties.

> "(s) Mrs. Annie Meyers
> "(s) Max Meyers
> "(s) Adolph Meyers
> "(s) Sophia Meyers
> "(s) Mrs. Goldina Hassell
> "(s) Mrs. Hannah Simon"

Appellees ask us to uphold the decree of the lower court on the ground that the claim herein asserted by appellant was one of the matters embraced in the compromise and that appellant is therefore bound by the terms of the above quoted agreement; and they further urge that any right of appellant, if not precluded by the compromise agreement, is barred by laches and limitations. Appellant argues that there had been no dispute as to her ownership of the stocks, and that her claim relative thereto was not embraced in the compromise agreement.

It is conceded by appellees that the claim, asserted by appellant in this suit is not specifically mentioned in the "stipulation and contract," but they urge that its terms are sufficiently broad to cover any claim that might be made by any of the parties against other signatories to the instrument and that it was so intended by all concerned.

The rule to be followed in construing this contract is thus expressed in 15 C. J. S., "Compromise and Settlement," § 27, p. 745: "A compromise agreement is conclusive only as to those matters which the parties have

fairly intended to include within its term, and the necessary consequences thereof. . . ."

Now this agreement, at its beginning, recites the application for letters of administration on the estate of Joe Meyers, and the two suits (one by one of the heirs against appellant to recover certain furniture and the other by appellant against her stepchildren to restrain them from molesting her, etc.), and sets forth the matters in dispute between the parties in the following language: "The questions in dispute among the parties hereto involve certain real estate and personal property that is in the possession of Mrs. Annie Meyers in which property the second parties herein claim that they own some interest." Following this recital of the matters to be settled, the contract sets forth the terms of the compromise agreement which were in substance: (1) That appellant would create the $3,000 trust fund in the bank; (2) that appellant would waive in favor of her stepchildren all interest in the real estate which had been conveyed to her in the lifetime of her husband except a life estate; (3) that the stepchildren would withdraw the proceedings in probate court for administration; (4) that any of the parties who had instituted a suit against other parties to the compromise would dismiss same; (5) that the stepchildren would disclaim any right, title or interest in any property "other than that which has heretofore been specifically mentioned that is in the possession of Mrs. Annie Meyers or title to which is vested in her; (6) that the parties would in the future 'leave each other alone.' "

Appellees in their testimony admitted the conversion of the stocks by them and the concealment from appellant of the fact of this conversion, as well as the payment to her of dividends on the stocks for thirteen years after they had disposed of the stocks. They attempted to justify their breach of trust by saying that their father owed appellee, Max Meyers, $6,000 and that for this reason they did not feel obligated to account to their stepmother for the securities which they held in trust for her.

Appellees sought to show that the claim of appellant for the stocks or their value was in dispute between the

parties at the time the agreement was signed by proof that appellant had asked for the stock at different times, but it was not shown that at any time before the filing of this suit they had ever asserted to her that they were entitled to the stocks or the proceeds of same. Nor did they, up to that time, inform her that her stocks had been sold.

Appellant in her testimony denied that there had ever been any dispute as to her ownership of the stocks, and the attorney who drafted the compromise agreement testified as to this phase of the matter: "Something had been said about the stock, but at the time I prepared the stipulation, the stock was not one of the matters in dispute."

Whether, in view of the unambiguous language of the contract, testimony tending to show that any controversy not specifically set forth therein was in contemplation of the parties when they executed it was competent and admissible we do not find necessary to decide. It may be said, however, that the preponderance of the testimony did not establish that prior to execution of the "stipulation and contract" there was any dispute between the parties as to appellant's right to the stocks or that such a dispute was contemplated by the parties in executing the compromise agreement.

A fair interpretation of this agreement, we think, is that, by it the parties meant to compose only the differences between them that had resulted in the lawsuits, and these differences all arose from and centered around the feeling on the part of appllant's stepchildren that in justice the property of appellant, bought by their father, should, on appellant's death, descend to them, rather than to appellant's kindred. This feeling engendered the vociferous demands made on her by them and these demands led to the injunction suit instituted by appellant as well as to the replevin suit and the proceedings in probate court begun by the stepchildren against appellant.

It appears from the record that at no time during the quarrels that provoked the litigation preceding the

compromise did any of the parties mention the liability of appellees to appellant on these stocks. She did not, in upholding her side of the quarrel, call for a restoration of these stocks. The appellees, in maintaining their side of the dispute, made no mention of the **stocks or of the** $6,000 liability of their deceased father to them. In none of the litigation that led to the compromise was there any mention made of these stocks or of any controversy pertaining to them.

We conclude that the claim of appellant against her trustees for an accounting as to the trust property was not in the contemplation of the parties when they composed their differences and disputes by the compromise, and that it cannot be held that this claim was in terms or by implication barred by the compromise agreement.

Nor was appellant's right of action barred by laches or limitation. By appellees' own admission they did not at any time, before the institution of this suit, apprise appellant that they were asserting an adverse claim to these stocks or the proceeds thereof. On the contrary, they admitted paying her dividends thereon until March, 1944, and admitted that they had always evaded her inquiries about the stocks. Appellant was not required to act in the matter until she knew that her trustees were disavowing the trusteeship. She therefore could not be held guilty of laches; and limitation would not begin to run against her until such disavowal. ''The doctrine of laches applies to the enforcement of an express trust when, and only when, there has been an open and unequivocal breach or repudiation of the trust, assertion of an adverse right, title or interest, or other act of hostility to the trust, by the trustee, which has been so brought home to the actual or constructive knowledge of the *cestui que trust* as to require him to assert his rights promptly, and, with such knowledge, he has inexcusably and unreasonably delayed asserting his rights to the injury or prejudice of defendant. . . .'' 65 C. J. 1024; *Walker-Lucas-Hudson Oil Company* v. *Hudson*, 168 Ark. 1098, 272 S. W. 836; *Lasker-Morris Bank & Trust Company* v. *Gans,*, 132 Ark. 402, 200 S. W. 1029.

It follows that appellant is entitled to a decree against appellees for the value of the stocks at the time they were converted by appellees, with interest at the legal rate from date of the conversion, less credits by way of dividends paid by appellees to appellant from time to time. Since some of the items necessary to a proper computation of the amount of the decree are not clearly shown by the proof, we reverse the decree of the lower court and remand the cause with directions to the court below to enter a decree in favor of appellant in accordance with this opinion, and, if necessary to do so, to take additional testimony as to any items entering into a calculation of the amount due to appellant from appellees; and all costs to be adjudged against appellees.

McHANEY, J. I dissent because in my opinion the settlement agreement was a family settlement and should be liberally construed to cover all matters then in dispute, or which should have been in dispute. I think the decree should be affirmed.