W. E. McPHERSON Sr. *v.* Audra McPHERSON et al

75-44                               523 S.W. 2d 623

Opinion delivered June 9, 1975

*William M. Moorhead,* for appellant.

*George E. Pike,* for appellees.

J. FRED JONES, Justice. This is an appeal by W. E. McPherson, Sr., from a chancery court decree holding him liable to an accounting in the administration of an express trust in favor of his two daughters and one son, Audra McPherson Johnson, Kay McPherson Dolnik and W. E. McPherson, Jr. The daughters will hereafter be referred to by their given names Audra and Kay and the son as Billy.

On December 31, 1951, W. E. McPherson, Sr., and his wife Helen executed a declaration of trust between themselves as grantors and themselves as trustees in which they declared as follows:

"Whereas the Grantors desire to make some present provision for the economic security of their children by the establishment of separate estates for them, but due to the minority of said children it was considered advisable to place such estates in trust in order that it may be properly administered prior to the time said children reach the age of twenty-five years; and

Whereas, in fulfillment of such plan, Grantors by warranty deed dated December 29, 1951, and recorded in the office of the Recorder of Arkansas County, Arkansas, irrevocably conveyed to themselves as Trustees for

their children approximately 1028 acres of land in Arkansas County, Arkansas, said land being more fully described below:

NOW, THEREFORE, the Trustees, Helen M. McPherson and W. E. McPherson, hereby declare that they hold in trust the following described property for the uses and purposes and subject to the terms and conditions hereinafter set forth, to-wit:

1. *Beneficiaries of the Trust.* This trust is for the equal use and benefit of Grantors' children, AUDREY NELL McPHERSON, WILLIAM E. McPHERSON, JR. AND KAY FRANCES McPHERSON. Said children are the equitable owners of the trust corpus, naked legal title only being vested in the Trustees for the purposes of management.

2. *Corpus of the Trust.* The initial corpus of the trust is the following described lands located in the County of Arkansas, State of Arkansas, to-wit: [legal description].

The Grantors may from time to time convey to themselves, as Trustees, additional property to be added to the corpus of this trust for the same uses and subject to the same terms and conditions as herein set forth.

3. *Distribution of Income.* Out of the gross income of the trust, the Trustees shall first pay all necessary and reasonable costs incident to the proper protection, management, conservation and improvement of the trust estate. The remaining net income of the trust shall be paid not less frequently than annually to AUDREY NELL McPHERSON, WILLIAM E. McPHERSON, JR. and KAY FRANCES McPHERSON, share and share alike, if living, or to the children of any deceased child, per stirpes.

4. *Distribution of Corpus.* This trust shall terminate when the Grantors' youngest living child reaches the age of twenty-five years. Should Kay Frances McPherson die before reaching the age of twenty-five years and the

Grantors' youngest living child be above the age of twenty-five years on the death of Kay Frances McPherson, the trust shall terminate upon the death of Kay Frances McPherson.

Upon the termination of the trust, the corpus of the trust shall be distributed to AUDREY NELL McPHERSON, WILLIAM E. McPHERSON, JR. and KAY FRANCES McPHERSON in equal shares. Should any child be not then living but be then survived by a child or children, the share of such deceased child shall be distributed to the child or children of such deceased child. Should any child die before the termination of the trust, survived by no children, such child's share of the corpus shall be distributed to the Grantors' other children and the children of any other deceased child, per stirpes. Should all of said children die prior to the termination of the trust survived by no children, the trust corpus shall be distributed upon the death of the survivor of said children to the estate of said survivor.

5. *Management of Trust Estate.* The trustees are charged with the custody, management and protection of all properties and funds of the trust estate. The Trustees are authorized to sell or exchange and convey, at private sale, any real or personal property of the trust; to lease any trust assets, and to receive and receipt for rents, royalties, property or other interests received by the trust estate; to satisfy liens on real or personal property of the trust; to institute legal proceedings for the recovery or protection of assets of the trust; to make compromise settlements of any claims or demands of or against the trust estate; to borrow money and to execute a mortgage on trust assets to secure such a loan; to employ an agent or agents to manage, subject to the Trustee's supervisory control, any part or all of the assets of the trust estate; and otherwise, to exercise all duties, rights and authority reasonably incident to the ownership of the trust assets and the discharge of their trust responsibilities.

All acts of the Trustees, however, with reference to the

management, conservation, improvement or disposition of the trust corpus and income shall be solely in their capacity as fiduciaries of the trust and the holders of naked legal title to the trust assets. The Trustees shall never under any circumstances in their capacities as individuals borrow from the trust estate, purchase any of the trust assets except at the fair market value thereof, pledge any trust assets for their own benefit, use any of the trust assets to discharge any legal or moral obligation of their own, control of use [sic] the trust estate or the income therefrom in any manner for their personal benefit, or otherwise take any action which is not in the best interests of and for the sole benefit of the beneficiaries of the trust estate.

6. *Successor and Co-Trustees.* WILLIAM E. McPHERSON, JR. shall become a Co-Trustee of the trust when he reaches the age of twenty-one years. In the event of the death, incapacity, or resignation as Trustee of either W. E. McPherson or Helen M. McPherson, HUBERT C. McPHERSON shall serve as a Co-Trustee. Any successor Trustee shall be vested with the same duties and authorities as the original Trustees. No Trustee shall be required to give bond. Neither W. E. McPherson, Helen M. McPherson nor William E. McPherson, Jr. shall be paid any fee for their services as Trustee."

When the trust indenture and deed were executed, the oldest child Audra was 15 years of age; Billy was 14 years of age and Kay was seven years of age.

After the indenture was executed, Mr. McPherson rented the farm to a tenant under a rental agreement by which the trust shared in some of the expenses and took a share of the harvested crops as rental. In 1959, some seven years after the trust was executed, Mrs. McPherson obtained a divorce from the appellant on the basis of three years separation. In the divorce case, and in connection with the property rights involved, Mrs. McPherson attempted to require the appellant to make an accounting as trustee of the children's trust and to make payment of income for past years

under the provisions requiring an annual distribution of the income. The divorce case was appealed to this court, *McPherson v. Smith, Judge*, 231 Ark. 228, 328 S.W. 2d 849, and in that case we held that two separate causes of action were asserted, one against Mr. McPherson individually for divorce, and the other against him as trustee for an accounting in his representative capacity. We granted the requested writ of prohibition prohibiting the chancellor from proceeding in the petition against Mr. McPherson for an accounting in his capacity as trustee.

Under the trust indenture Billy was to become a co-trustee upon attaining the age of 21 years. He was released from military service in May, 1960, and in anticipation of his return from the service and taking over the entire operation and personally farming the trust lands as tenant while acting as trustee, the appellant performed some preparatory work in getting the land ready for planting the 1960 crop. Upon Billy's return from the service in May, 1960, he was placed in possession of the lands and also the equipment the appellant had acquired for his use and was given complete control of the cash trust funds in the bank. Thereafter Billy acted as the sole active trustee and the appellant did nothing, nor did he attempt to do anything toward controlling the trust assets or any of its activities.

Upon termination of the trust when Kay became 25 years of age in 1969, the three children brought the present action against the appellant seeking an accounting and a judgment against him for the annual income from the trust during the period of his active administration. It was the appellant's contention that during the negotiations between him and his former wife, pertaining to their property settlement, a family agreement was entered into by all parties concerned to the effect that if he would turn the entire administration of the trust over to Billy, no accounting would be required of him. He contended that all three of the *cestuis que* trust thus had knowledge of his abandonment of the trust to Billy and were, therefore, estopped by limitations and laches from demanding an accounting upon the termination of the trust. The chancellor held that the plea of laches was valid as to Billy, the successor active trustee, and dismissed the suit as

to him, but he permitted the suit to continue on Audra and Kay's complaint.

On the basis of reports by a certified public accountant, who initially testified for the appellant but did additional accounting work as master in chancery under direction of the chancellor, the chancellor determined that the appellant was indebted to Audra in the principal amount of $7,427.41 which together with interest at six per cent in the amount of $9,743.44, made a total amount of $17,170.85 owing to Audra as of August 1, 1973; that he was indebted to Billy in the principal amount of $8,959.45 which together with interest at six per cent in the amount of $11,164.21 made a total of $20,-123.61 owing to Billy as of August 1, 1973; that he was indebted to Kay in the principal amount of $10,468.60 which together with interest at six per cent in the amount of $12,-544.32 made a total of $23,013.92 owing Kay as of August 1, 1973.

The chancellor entered judgment for Audra against the appellant in the amount of $17,170.85 together with interest at six per cent from August 1, 1973, until paid, but gave the appellant credit on the judgment for the balance amount of $6,000 owed by Audra on a prior loan together with interest at six per cent from September 22, 1967, until the time of satisfaction of the judgment. The chancellor entered judgment against the appellant in favor of Kay in the amount of $23,013.92 together with interest at six per cent from August 1, 1973, until paid. The chancellor affirmed his findings as to the amounts due Billy but decreed that he take nothing against the appellant by judgment or otherwise since such relief was barred by the statute of limitations. The chancellor awarded costs, including the services of J. L. Michelle in the amount of $300, against the appellant and awarded $9,000 attorney's fee and sheriff and circuit clerk costs in the amount of $37.00 against the appellant.

On appeal to this court the appellant relies on the points designated as follows:

"The denial of the defenses of limitations and laches as against the plaintiffs, Audra McPherson Johnson and

Kay Lewis Dolnik on the grounds that they did not have notice that the defendant turned the entire management of the trust property over to the co-trustee and, in effect denied, repudiated and rejected the trust in the capacity of trustee is against the preponderance of the evidence.

The lower court's disallowance of the credit claimed for (1) irrigation equipment, (2) automobiles purchased for the beneficiaries, (3) money advanced to Audra to attend the University of Arkansas, and (4) of equipment purchased from third parties with trust funds and delivered to the successor-trustee, are all based upon findings which are against the preponderance of the evidence.

The allowance of an attorney's fee to the plaintiffs is unwarranted because no demand was made prior to the filing of this suit, and it is excessive."

As to the appellant's first point, we are unable to say that the chancellor's decree was against the preponderance of the evidence. The appellant argues that all three appellees had knowledge of the trust and the appellant's repudiation of it as early as 1960. All parties seem to agree on the law applicable to the defense of laches against trust beneficiaries who have personal knowledge of the trustee's repudiation of the trust.

Restatement (Second) of Trusts § 219 (1957) is as follows:

"Laches of the Beneficiary
(1) The beneficiary cannot hold the trustee liable for a breach of trust if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable.

(2) The beneficiary is not barred merely by lapse of time from enforcing the trust, but if the trustee repudiates the trust to the knowledge of the beneficiary, the beneficiary may be barred by laches from enforcing the trust."

Our decisions have followed the Restatement. See *Meyers* v. *Meyers*, 210 Ark. 714, 197 S.W. 2d 477 (1946).

In *Sprigg* v. *Wilmans*, 204 Ark. 863, 165 S.W. 2d 69 (1942), this court said:

> "At page 903, 37 C.J., title Limitations of Actions, a great many cases are cited in support of this statement of the law:
>
> '(Section 267) 27. Trusts—a. General Rule. In case of a technical, or in other words, direct, express, continuing trust, such as is exclusively within the jurisdiction of a court of equity, the general rule, sometimes declared by statute, is that the statute of limitations does not run between trustee and *cestui que* trust, so long as the trust subsists, for the possession of the trustee is the possession of the *cestui que* trust and the trustee holds according to his title; and, moreover, so long as this condition exists, no cause of action has accrued. In order to set the statute in motion in favor of the trustee the trust must terminate, as by its own limitation or by settlement of the parties, or there must be a repudiation of the trust by the trustee and an assertion of an adverse claim by him, and the fact made known to the *cestui que* trust. This proposition is well established by all the numerous cases in which the question has arisen, and there is no conflict of authority whatever upon the subject. The rule, however, is subject to the qualification that the *cestui que* trust may be barred of his remedy through laches or such a lapse of time as will give rise to a presumption of discharge or extinguishment of the trust.' "

Thus, in the case at bar, it was a question of fact as to whether the beneficiaries had such knowledge of the appellant's repudiation of the trust that laches would apply. The burden was on the appellant-trustee to prove that the beneficiaries had such notice. In the very early case of *Harriet and others* v. *Swan & Dixon*, 18 Ark. 495 (1857), this court said: .

> "[I]f it had been shown that Mrs. Barden had committed a breach of her trust beyond the mere *nonexecution*

of it, it could not avail the appellants, because mere acquiescence in a breach of trust will not prejudice a person who was ignorant of his rights; and it lies upon the trustee, who rests his defense on the acquiescence of *cestuis que trust* in the breach of trust, to prove they had knowledge or notice of it. *Hill on Trustees*, p. 627 and *other authorities cited by appellees.*"

The appellant contends that it is unrealistic to believe that appellees did not have notice of the repudiation because they knew of Billy's taking over the farming operation and of Mrs. McPherson's property settlement with the appellant, which he contends released him from an accounti' g. Billy was co-trustee under the terms of the trust and the testimony of both the appellees contradicts appellant's contention. Appellant also argues that the appellees stated reasons for not filing suit within nine years after appellant gave up control of the trust is not credible. In essence, appellant questions the credibility of the testimony. In *Marine Mart* v. *Pearce*, 252 Ark. 601, 480 S.W. 2d 133 (1972), we said:

"On appeal, this court will reverse a Chancellor's findings of fact only when such findings are against the preponderance of the evidence, . . . and further, where the issue is predominantly one of credibility between interested parties, we uphold the Chancellor's judgment."

As a second basis for holding appellees Audra and Kay guilty of laches, the appellant argues that they were barred because Mrs. McPherson and Billy were co-trustees and were barred by laches. For this proposition appellant cites Restatement (Second) of Trusts § 327 (1957):

"Rights of Beneficiary When Trustee Barred by the Statute of Limitations or Laches.

(1) Except as stated in Subsection (2), if the trustee is barred by the Statute of Limitations or by laches from maintaining an action against a third person with respect to the trust property, the beneficiary is precluded from maintaining an action against the third person.

(2) If the third person knowingly participated in a breach of trust, the beneficiary is not precluded from maintaining an action against him therefor, unless
(a) the beneficiary is himself guilty of laches, or
(b) a co-trustee who did not participate in the breach of trust, or a successor trustee knowing of the claim against the third person, fails to bring an action against him until he is barred by the Statute of Limitations or by laches."

The appellant argues that the above quoted subsection (2) (b) applies to the case at bar and cites as additional support *Chase* v. *Cartright*, 53 Ark. 358, 14 S.W. 90 (1890); *Hart* v. *Citizens' Nat'l Bank*, 105 Kan. 434, 185 P. 1 (1919). The appellant misapplies this authority. A fair reading of Restatement § 327 shows that it applies to a beneficiary's action against a third person who benefited from the trust and does not apply to a beneficiary's action against a wrong doing trustee. This section is part of Chapter 9 of the Restatement (Second) of Trusts entitled "Liabilities of Third Person." Restatement, § 219, *supra*, and its commentary, which sets forth the basis for laches in a suit by a beneficiary against a trustee, does not refer to § 327, whereas, comment j of § 327 says:

"If the trustee permits the claim against the third person to be barred, the beneficiary can maintain a suit against the trustee for breach of trust (see § 177), unless he is barred by laches or otherwise from so doing (see § 219)."

Thus it would appear, the rules expressed in § 219 control the application of laches in a suit by a beneficiary against his trustee. The cases cited by the appellant in support of this argument on this point deal with suits by a beneficiary against third persons unconnected with the administration of the trust, and not against trustees or former trustees. In *Chase* v. *Cartright*, *supra*, the trustee held legal title to some land which was part of a testamentary trust. The defendant possessed this land adversely to the trust. The plaintiffs, who had been contingent remaindermen to beneficial interests in the property, brought suit when their interest vested. In

holding the plaintiffs barred from bringing suit against the *adverse possessor*, this court said:

> "Seven years adverse possession was sufficient to bar the right of the trustees, they being under no disability; but whenever the right of action in the trustees is barred by limitation, the right of *cestuis que trust* thus represented is also barred."

In *Hart v. Citizens' Nat'l Bank, supra,* a trustee breached his trust by conveying certain stock in the trust corpus to the defendant bank. Shortly thereafter this trustee resigned and a successor was appointed. The successor trustee had knowledge of the stock transfer but never brought suit. The beneficiaries did not bring the action until they attained their majority, some 14 years later. The Supreme Court of Kansas applied the Restatement rule in § 327 and held the suit barred against the bank. The appellant has cited no case, and we have found none, wherein the beneficiaries of a trust were barred by laches from suing a wrongdoing trustee because a co-trustee or successor trustee failed to sue within a reasonable time.

The appellant finally argues that laches applies in this case because the appellees obtained copies of the trust agreement in December, 1965, and knew from it that an annual accounting was required, but failed to bring the action until April, 1969. This argument is without merit since the period of laches ran from the time the appellees received knowledge of the *trustee's repudiation* of the trust. *Meyers v. Meyers, supra.*

As to the appellant's second point, the rule is well established that a trustee has only such powers as are conferred by the terms of the trust; are necessary or appropriate in carrying out the purposes of the trust, and are not forbidden by its terms. Restatement (Second) of Trusts, § 186 (1957); *Linsay v. White,* 212 Ark. 541, 206 S.W. 2d 762 (1947).

The declaration in the case at bar recites as one of its purposes:

> "[T]o place such estates in trust in order that it may be

properly administered prior to the time said children reach the age of twenty-five years."

Paragraph 3 of the declaration provides that:

"Out of the gross income of the trust, the Trustees shall first pay all necessary and reasonable costs incident to the proper protection, management, conservation and improvement of the trust estate."

The chancellor allowed credit on the judgment against the appellant for some items claimed by the appellant and he denied others. We shall only discuss the items the appellant argues were erroneously disallowed. He first argues that the chancellor erred in disallowing a $1,500 claim for the value of an engine and two re-lift pumps which were part of the irrigation system belonging to the trust. We agree with the appellant on this point. The chancellor properly allowed credit for the construction of a reservoir and canal system on the trust lands, and we conclude that the engine and two re-lift pumps were incidental to the proper protection, management, conservation and improvement of the trust estate. This item was disallowed by the chancellor because proper records of cost were not kept and submitted in evidence. We are of the opinion that the depreciation schedule on the items reflected in the appellant's tax returns, was sufficient justification for the amount of the claim, and that this item should have been allowed.

The appellant next argues that the chancellor erred in not crediting the appellant with two automobiles purchased for Audra and Kay. We are of the opinion that the chancellor was right on these two items. There was evidence from which the chancellor could have concluded that the automobile for Audra was purchased by the appellant as a birthday present from father to daughter, and that the automobile purchased for Kay was a wedding present. The appellant points to Audra's testimony pertaining to the strained family relations about the time the automobile was purchased for her, but there was also testimony that the appellant had considerable interest and also considerable difficulty in getting Audra to attend college; that the automobile was purchased in connec-

tion with such persuasion and Audra considered it a birthday present from her father. As to Kay's automobile, it appears to have been purchased after the appellant ceased his activities as trustee and that it was actually paid for out of his own personal funds for which he claimed reimbursement from the trust.

The appellant next contends that the chancellor erred in not giving the appellant credit for monies advanced to Audra for her college education in the years 1957 and 1958. We agree with the appellant on this item. Even though Audra testified that she had no knowledge of the trust fund until 1960, she admitted that in 1956 she endorsed and cashed a check drawn on the account of "W. E. and Helen McPherson trust fund by W. E. McPherson" in the amount of $200. She testified, however, that she was only 17 or 18 years of age at the time she cashed this check and did not pay a bit of attention to what account the check was drawn on. She then testified as follows:

"Q. I hand you another document and ask you whether or not you can identify it as being a check you received and cashed?

A. Yes, I did. It's dated 1-25-57 in the amount of $370.00 made out to Audra Nell McPherson signed by W. E. and Helen McPherson trust fund by W. E. McPherson. I still say that I was not aware of this trust fund business, which was stupidity on my part, I'll admit.

Q. You did endorse that check?

A. I did endorse that check.

Q. Isn't it true that you received many such checks while you were in school and while you were working down in Texas?

A. Not while I was working in Texas, I didn't receive any.

Q. While you were in school?

A. While I was in school, but I remember one time when I was going to school and I don't know . . .

Q. If it's not in answer to my question . . .

A. Well, I'm trying to explain about the checks. Would you like for me to finish?

Q. My question is, did you receive other checks drawn on this trust while you were in school.

A. I don't remember if they were drawn like that. They could have been.

Q. There could have been others?

A. Yes, sir.

Q. You did receive money from your father on this account or other accounts while you were in school?

A. While I was in school, yes."

The appellant testified as to the difficulty he encountered in attempting to get Audra to accept a college education. The record indicates that Audra worked one year at the University of Arkansas when her father thought she was attending classes and she was not. The appellant testified that before he started sending her checks written on the trust account, he advised her the money would be charged to her account. We are of the opinion that the appellant should have credit for the amounts paid to Audra while she was attending college and while her father thought she was attending college in 1957 and 1958.

The appellant next argues that the chancellor erred in disallowing the appellant's claim in the amount of $12,084.85 for farm machinery purchased by the appellant in 1959 and delivered to Billy as successor trustee in 1960. We agree with the appellant as to this item. The record indicates that prior

to 1960 when Billy took over the administration of the trust and started farming the trust lands, the lands had been farmed by tenants under a system whereby the tenants furnished their own farming equipment. Billy not only administered the trust as sole trustee after 1960, but he also farmed the land and owned no farming equipment with which to do so. The farm machinery so purchased by the appellant was transferred to Billy as trustee and belonged to the trust and became a part of the trust estate. The trust indenture provided that "The Grantors may from time to time convey to themselves, as Trustees, additional property to be added to the corpus of this trust for the same uses and subject to the same terms and conditions as herein set forth"; and the indenture further provides for the expenditure of funds in the proper management of the trust estate. Furthermore, it would only be equitable for the trust to pay for the farm machinery owned by it and used by the trustee farming the trust lands. We are of the opinion that the appellant should have been credited with the $12,084.85 for farm machinery he purchased for the trust and delivered to Billy as successor trustee.

The appellant next argues that the allowance of attorney's fee for the appellees and charged against the appellant was unwarranted because no demand for an accounting had been made prior to the time the suit was filed. The appellant cites no statutory or case law in support of this argument and we are of the opinion that the argument is without merit. It is apparent from the record that a demand for accounting would have been an idle gesture since the appellant's primary defense was that the appellees were barred by laches following a family settlement agreement.

The appellant next argues that the amount awarded the appellees as attorney's fee was excessive and we agree with this contention. The attorneys representing the appellees originally did so under a contingent fee arrangement whereby they would receive 25% of amounts recovered in the event of recovery, and would receive nothing if no recovery was obtained. We conclude that the assessment of attorneys' fee in the amount of $9,000 was excessive in this case, and that the fee awarded against appellant should be reduced to $5,000.

The amount of money advanced to Audra for college expenses during 1957 and 1958 is not clear from the record before us so we conclude that this case should be remanded to the chancery court for entry of a decree not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded.