ROBERT J. GLADWIN, Judge
This appeal stems from a dispute between three siblings over the management and distribution of their mother's trust. Deborah Mitchell (Deb), sued her siblings, Cynthia Horton (Cindy) and Prentice Young (Butch), and Cindy and Butch filed a counterclaim against Deb. Deb ultimately prevailed. Thereafter, the circuit court awarded Deb attorney's fees and later held Cindy in contempt of court for failing to comply with its orders. Butch had died by the time the contempt proceedings were held, and Bryce Brewer was appointed as special administrator of Butch's estate.[1] Cindy and Butch appeal the circuit court's judgment, the order awarding attorney's fees, and the contempt finding against Cindy. Deb cross-appeals, challenging a posttrial ruling wherein the circuit court refused to void a mortgage on certain property that Cindy and Butch had given to their lawyer. We affirm on direct appeal and on cross-appeal.
I. Background
The Rena Byars Mitchell Revocable Trust (the Trust) was established by Rena Byars Mitchell in June 2005. Pursuant to the Trust, Rena, a widow with three living children-Deb, Cindy, and Butch-served as the initial trustee.
Deb, Cindy, and Butch have been estranged for years. Their strained relationship is apparent throughout this litigation. Deb generally claims that Butch and Cindy, who lived on the same property as Rena until Rena's death, abused drugs and mistreated Rena during her life, while Butch and Cindy accuse Deb of being absent from their mother's life.
Due to health problems, Rena resigned as trustee of the Trust in April 2008. The Trust delineated that on her resignation, Butch, Cindy, and Deb would be appointed as cotrustees and serve by majority agreement.
*279 This allowed two of the three siblings, Butch and Cindy, authority to make decisions on behalf of the Trust without Deb's approval.
After Rena's resignation, Deb petitioned for guardianship of Rena's estate and person, and Butch and Cindy petitioned to become coguardians of Rena's estate and person. Ultimately, Butch and Deb were appointed as coguardians. Cindy admitted to long-term methamphetamine use at the guardianship hearing. Later, Butch resigned after refusing to submit to a drug test, and Deb became Rena's sole guardian.
In May 2012, Rena died. Shortly after Rena's death, Deb filed a complaint and then an amended complaint relating to administration of the Trust and alleged the misappropriation of Trust funds by Cindy and Butch. She made claims against Cindy and Butch for breach of trust, breach of fiduciary duty, conversion, fraud, breach of contract, civil action by a crime victim, tortious interference, unjust enrichment, removal of trustees, imposition of constructive trust and equitable lien, and injunction. Generally, Deb claims that Butch and Cindy used their powers as cotrustees to pay themselves hundreds of thousands of dollars out of the Trust for which Deb contends there was little or no justification or supporting documentation. Butch and Cindy counterclaimed and alleged that Deb breached her duties as cotrustee.
A three-day jury trial was held on July 27, 28, and 30, 2015. At the conclusion of the trial, the jury rendered a verdict in favor of Deb. The jury found Butch liable to Deb on behalf of the Trust for $420,000 in compensatory damages and $630,000 in punitive damages and found Cindy liable for $205,000 in compensatory damages and $310,000 in punitive damages. The jury also rejected Butch and Cindy's counterclaim. This left pending several equitable claims to be decided by the circuit court. After the jury was released, counsel for Deb mentioned that he was concerned about the resolution of Deb's pending injunction claim because, until it was decided, Butch and Cindy could theoretically clean out the Trust account. The court responded by saying there would be no action on the Trust over the weekend and directed the parties to promptly prepare a judgment for its approval.
More than two months passed, and on October 5, 2015, a judgment memorializing the jury's verdict was entered. That same day, the circuit court entered a decree addressing many of Deb's equitable claims. The decree included language that "in the event" Butch and Cindy "have withdrawn any money from the trust or disposed of any trust property, they are given ten (10) days from the date this decree is filed ... to return said funds or property to the trust."
Thereafter, Butch and Cindy filed a motion for judgment notwithstanding the verdict and a motion for new trial or remittitur. Deb responded, and the circuit court denied the motions. Butch and Cindy filed a notice of appeal of the judgment and the denial of their posttrial motions. Later, a judgment for prejudgment interest was entered, and Butch and Cindy filed an amended notice of appeal to include this order. Finally, the circuit court entered an order awarding attorney's fees and costs to Deb, and Butch and Cindy timely appealed this order.
The record on appeal was filed in our court. However, the appeal was dismissed without prejudice due to lack of finality. There were several pending claims that had not been resolved. The case was remanded to the circuit court, and the circuit court administratively dismissed the unresolved claims. Butch and Cindy timely appealed.
*280 The circuit court also held a contempt hearing based on a motion filed by Deb. Deb claimed that Cindy and Butch had violated the circuit court's July 2015 oral order not to engage in any Trust transactions over the weekend following the jury trial. She also claimed that Cindy and Butch had violated the circuit court's decree, which required them to return any funds or property they may have withdrawn from or disposed of from the Trust. Also, in the contempt motion, Deb sought to have a mortgage on Trust property that Cindy and Butch executed in favor of their attorney as payment for his attorney's fees declared null and void. Shortly after Deb filed the motion, Butch died, and Bryce Brewer was appointed as special administrator of his estate.
At the contempt hearing, Deb proceeded against only Cindy since Butch had died. The circuit court held Cindy in contempt and ordered her to reimburse the Trust for $41,054.32 that she and Butch had taken in violation of the court's posttrial orders. The circuit court denied Deb's request to cancel the mortgage Butch and Cindy executed in favor of their attorney. Butch and Cindy timely appealed from the contempt order, and Deb cross-appealed.
Finally, Cindy and Butch filed a motion to modify the judgment, and Deb filed a motion for reconsideration of the contempt order. Both motions were deemed denied, and the parties timely filed a final notice of appeal and cross-appeal.
In this appeal, our court must decide several issues. On direct appeal, Cindy and Butch contend (1) the doctrine of laches barred Deb's claims, (2) the language of the Trust barred Deb's claims, (3) the jury verdict contained a mathematical error, (4) the punitive-damages award should be reversed, (5) the award of attorney's fees should be reversed, and (6) the finding of contempt against Cindy should be reversed. On cross-appeal, Deb contends the circuit court erred when it declined to rule that Butch and Cindy's mortgage of the trust property should be canceled and invalidated.
II. The Direct Appeal
A. Laches
Butch and Cindy raised the defense of laches to Deb's claims, arguing that Deb waited too long after she realized she had concerns about the management of the Trust to pursue her claims against them. The defense was rejected by the circuit court. Specifically, the circuit court found that "laches is not a defense to the claims presented to and decided by the jury because the jury's verdict was for legal causes of action, and laches does not apply to legal causes of action." Butch and Cindy contend the rejection of their laches defense was reversible error.
Laches is based on the equitable principle that an unreasonable delay by the party seeking relief precludes recovery when the circumstances are such as to make it inequitable or unjust for the party to seek relief. Larco, Inc. v. Strebeck , 2010 Ark. App. 263, at 4, 379 S.W.3d 16, 20. It requires a detrimental change in the position of the one asserting the doctrine, as well as an unreasonable delay by the one asserting his rights against whom laches is invoked. Id.
The principle question here is whether the laches defense is applicable to legal causes of action. Our caselaw frequently provides that "the doctrine of laches is only applicable where equitable relief is sought; where a party is only seeking to enforce a legal right ... and is not seeking equitable relief, the doctrine of laches has no application." See generally Warford v. Union Bank of Benton , 2010 Ark. App. 635, at 5, 378 S.W.3d 239, 243 ;
*281 Landreth v. First Nat'l Bank of Cleburne Cty. , 45 F.3d 267, 271 (8th Cir. 1995) ; Rogers Iron & Metal Corp. v. K & M, Inc. , 22 Ark. App. 228, 230, 738 S.W.2d 110, 111 (1987). Moreover, our courts have held that "laches is not applicable to actions for damages, accounting, or the recovery of money or property fraudulently obtained." Warford, supra.
In support of reversal, Butch and Cindy cite McPherson v. McPherson , a trust case in which money damages were awarded. 258 Ark. 257, 523 S.W.2d 623 (1975). In McPherson , the supreme court determined that the doctrine of laches was inapplicable but not before first conducting a detailed analysis of the facts at issue. Notably, the McPherson court did not engage in a discussion of whether the award of money damages precluded the defense of laches.
Butch and Cindy's reliance on McPherson is unavailing to our court. It does not directly address whether the defense of laches is applicable to cases in which money damages are sought. Moreover, the depth of our caselaw indicates that laches is applicable only in instances in which equitable relief is sought. Therefore, we are persuaded that the doctrine of laches is inapplicable in this case, and we affirm the circuit court's decision on this basis.
B. The Language of the Trust
Butch and Cindy also argue that the language of the Trust barred Deb's claims. For this point on appeal, it is necessary to analyze several specific provisions of the Trust because "the cardinal rule in construing a trust instrument is that the intention of the settlor must be ascertained." Bailey v. Delta Tr. & Bank , 359 Ark. 424, 432, 198 S.W.3d 506, 512 (2004). When construing the Trust, we conduct a de novo review. Anna Flippin Long Trust v. Holk , 315 Ark. 112, 113, 864 S.W.2d 869, 869 (1993).
We begin our analysis by highlighting several of the most pertinent provisions of the Trust. Article XIV(B) of the Trust governs the appointment of trustees in the event Rena was unable or unwilling to serve and provides that Rena's children will be appointed as cotrustees serving by majority agreement. The Trust gives the trustees discretion concerning distributions of income and principal that is "absolute and uncontrolled and subject to correction by a court only if the Trustee should act utterly without reason, or in bad faith, or in violation of specific provisions" of the Trust. The Trust further provides, "[U]nless I have specifically provided otherwise, and subject to any ascertainable standard governing its exercise, the Trustee's discretionary power to distribute income or principal includes the power to distribute all of such income and/or principal to one or more members of a class to the exclusion of others whether or not the terms of the trust specifically mention the possibility."
A review of the Trust indicates that Rena authorized unequal distributions. Frequently, Cindy and Butch characterize Deb's lawsuit as being based on the premise that they received more distributions from the Trust than she did. Based on their argument, they claim that Deb's lawsuit is meritless. This oversimplifies Deb's position. Throughout the litigation, Deb has challenged the distributions to her siblings but not merely on the basis of the unequal amounts distributed. She also opposed the expenditures for Butch's work on the farm and Cindy's work caring for her mother on the basis that there was no documentation in support of their work. Moreover, she called into question whether Butch and Cindy were truly caring for the *282 farm and their mother as they purported to be.
The Trust imposes a limitation on distributions that allowed for court correction in instances in which a trustee acts utterly without reason or in bad faith. This is where Deb's case hinges. Butch and Cindy contend that there was no evidence of their bad faith, but we disagree. Enormous distributions were made to Butch and Cindy. They were purportedly made to account for Butch's work on the farm and Cindy's work acting as Rena's caregiver; however, there is little to no documentation to support those distributions. Although the Trust does not require documentation for expenditures, the lack of documentation raises concerns. There was extensive testimony that neither Rena nor the farm were being properly cared for by Butch and Cindy. Especially troublesome is the testimony about Rena's standard of living. Specifically, Rena had Visqueen covering her windows and was living in a filthy room full of animal feces. This testimony coupled with the lack of documentation is sufficient to support a finding of bad faith. For these reasons, we find no error on this point.
C. Mathematical Error in Damages Calculation
On this point, Butch and Cindy seek to have the jury verdict reduced based on a perceived mathematical error. Our court has the authority to correct "obvious mathematical errors" on appeal. Harper v. Shackleford , 41 Ark. App. 116, 122, 850 S.W.2d 15, 19 (1993). We may do so in instances in which the verdict is not supported by substantial evidence. See Bank of Eureka Springs v. Evans , 353 Ark. 438, 455, 109 S.W.3d 672, 682 (2003).
Here, any mathematical error potentially made by the jury was not "obvious," as required by our caselaw. In fact, Butch and Cindy's counsel admitted in his oral argument that the math was complicated.
A review of the evidence reveals that Deb's expert witness, Woodrow White, calculated her damages. During White's testimony, he opined that damages from Butch should amount to the $400,000 he received in excess of the royalties plus the $20,000 he kept from cattle sales. White also testified that damages from Cindy should amount to $205,000. Although Butch and Cindy's attorney extensively cross-examined White, they did not call a damages witness and one could easily reach the conclusion that Deb should be awarded these amounts. We are reminded that resolving conflicting evidence is within the province of the jury. Minerva Enters., Inc. v. Howlett , 308 Ark. 291, 824 S.W.2d 377 (1992). Moreover, a jury is free to believe or disbelieve the testimony of any witness. See Farm Bureau Mut. Ins. Co. v. Foote , 341 Ark. 105, 14 S.W.3d 512 (2000). Because there is substantial evidence to support the jury's verdict, we decline to reduce the verdict based on an alleged obvious mathematical error.
D. Punitive Damages
Butch and Cindy also seek reversal of the $630,000 punitive-damages award assessed against Butch and the $310,000 punitive-damages award assessed against Cindy. They argue that the award of punitive damages was not permissible.
An award of punitive damages requires more than a "gross dereliction of duty." Orsini v. Larry Moyer Trucking, Inc. , 310 Ark. 179, 182, 833 S.W.2d 366, 368 (1992). Instead, it requires "proof of intentional wrong or conscious indifference to the consequences from which malice may be inferred." Id. When deciding whether this threshold has been met, our *283 court undertakes a substantial-evidence standard of review. D'Arbonne Constr. Co. v. Foster , 80 Ark. App. 87, 92, 91 S.W.3d 540, 543 (2002).
Butch and Cindy argue that Deb offered no proof of malice. We disagree. The evidence reflected that Butch and Cindy paid themselves large amounts of money from the Trust for purportedly providing services to their mother and the farm. Deb clearly called into question the validity of the services they allegedly provided. There was no documentation of the services. Moreover, there was significant evidence regarding the lack of actual work being done on the farm and as it related to the care of Rena. Specifically, there was evidence of neglect of these responsibilities despite the frequent and substantial distributions being made from the Trust. Finally, there was evidence that Butch and Cindy used threats and intimidation to dissuade Deb from visiting or inquiring too much. Those facts taken together are indicative of intentional wrong or conscious indifference to their consequences, and we hold that malice could be properly inferred by a jury and affirm.
E. Attorney's Fees
Butch and Cindy also appeal the circuit court's award of attorney's fees to Deb. On this point, Butch and Cindy merely seek reversal of the attorney's fee award in the event our court reverses on any of the previous points. Because we affirm on each of the previous arguments presented, we also affirm the award of attorney's fees.
F. Contempt
Finally, Butch and Cindy challenge the circuit court's contempt finding against Cindy. We begin our analysis by discussing the orders Cindy is alleged to have violated. After the jury rendered its verdict, the circuit court announced that there would be no action on the Trust over the weekend. When the circuit court entered its order more than two months later in October 2015, it included the directive that "in the event" Butch and Cindy "have withdrawn any money from the trust or disposed of any trust property, they are given ten (10) days from the date this decree is filed ... to return said funds or property to the trust."
Deb filed a motion for contempt claiming that Butch and Cindy violated the court's orders. The motion proceeded against Cindy since Butch had died. Ultimately, the circuit court found that Cindy was in contempt of court and ordered Cindy to pay $41,054.32 to Deb within thirty days of the filing of the order to purge herself of contempt. The circuit court further ordered that if Cindy did not make this payment, judgment would be entered against her, which would include pre-and postjudgment interest.
Cindy and Butch appeal this order, and they make two arguments in support of reversal. First, they argue that the order was not a valid contempt order. They also argue that the contempt finding must be reversed because Cindy did not violate a clear and definite order of the court.
Their first argument is premised on the concept that the contempt order bears indicators of being both criminal and civil contempt. In such instances, a contempt order is invalid.
A basic explanation of the differences in civil and criminal contempt is helpful to our analysis of this issue. Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. Omni Holding & Dev. Corp. v. 3D.S.A., Inc. , 356 Ark. 440, 156 S.W.3d 228 (2004). Civil contempt protects the rights of private parties by compelling compliance with orders of *284 the court made for the benefit of private parties. Id. In determining whether a particular action constitutes criminal or civil contempt, the focus is on the character of the relief rather than the nature of the proceeding. Applegate v. Applegate , 101 Ark. App. 289, 275 S.W.3d 682 (2008). Civil contempt coerces, and a contemnor may free himself or herself by complying with the order. Id. The punishment is remedial and for the benefit of the complainant. Id. Criminal contempt carries an unconditional penalty, and the contempt cannot be purged; the sentence is punitive to vindicate the authority of the court. Id.
Here, Cindy argues that compliance and the penalty for noncompliance were the same-under either scenario she had to pay $41,054.32. Thus, any offer for her to purge herself of contempt was illusory. We disagree. The penalty for noncompliance was not the same as the method to purge herself of contempt. If Cindy failed to comply with the circuit court's orders, the amount she owed would be reduced to a judgment plus interest. This is a penalty more severe than merely paying the money owed. This is a valid civil-contempt order.
Cindy and Butch's second challenge to the contempt finding is that the orders of the court were too indefinite to enforce. Before one can be held in contempt for violating a court order, the order must be definite in its terms and clear as to what duties it imposes. Holifield v. Mullenax Fin. & Tax Advisory Grp., Inc. , 2009 Ark. App. 280, at 3, 307 S.W.3d 608, 611.
Butch and Cindy argue that the language "over the weekend" from the circuit court's oral directive precluded Deb from seeking a contempt finding against them for any actions taken after the weekend because it was not clear and definite in the duties it imposed. If that were the only order of the court, we would agree. However, in the October 2015 order, the circuit court also ordered any funds withdrawn or Trust property disposed of to be returned. The October 2015 order is clear and definite in the duties it imposed.
Next, Butch and Cindy dispute the evidence in support of the contempt finding. Deb's motion for contempt challenged certain transactions made after the jury trial. Four transactions are pertinent to our review:
1. A July 31, 2015 check for $13,013.12 made out to Butch and signed by Butch and Cindy.
2. An August 6, 2015 withdrawal in the amount of $6,707.86.
3. A September 22, 2015 check from Plains Marketing, L.P., made out to Butch in the amount of $10,667.67.
4. A September 22, 2015 check from Plains Marketing, L.P., made out to Cindy in the amount of $10,667.67.
We review the contempt findings for whether they are clearly against the preponderance of the evidence. Omni Holding & Dev. Corp., supra.
First, we address the July 31 check. This check, bearing Cindy's signature, was cashed during the weekend following the jury trial. Cindy testified that she had presigned several checks, and she had no knowledge of the withdrawal. Irrespective of this, the testimony of an interested party is always considered to be controverted. Cont'l Express v. Harris , 61 Ark. App. 198, 965 S.W.2d 811 (1998). We defer to the circuit court in making credibility determinations. Moody v. Moody , 2017 Ark. App. 582, 533 S.W.3d 152. We hold that the contempt finding with regard to the July 31 check was not clearly against the preponderance of the evidence.
*285 Next, we examine the September 2015 check to Cindy for $10,667.67. Cindy testified that she understood that to be her individual money and not part of the Trust. In support, she emphasizes that the check was payable to her and not the Trust. On the other hand, the evidence reflected that the Trust owned the property. This supports a finding that Cindy violated the circuit court's October 2015 order when she failed and refused to return this money to the Trust. We affirm the contempt finding with regard to this check as well.
The evidence also indicated that Butch received a $10,667.67 check in September 2015. In fact, Cindy testified that she knew Butch received a check in this amount. Once again, this check may have been payable directly to Butch, but the evidence reflected that it was a payment for property owned by the Trust. Cindy makes an additional argument with regard to this transaction. She claims that there was no evidence she had the access to the funds so that she could return them. Irrespective of her arguments, Cindy admitted that she knew Butch had received this money, which belonged to the Trust. The October 2015 order required them to return any funds or property of the Trust in the event either had withdrawn any money from the Trust or disposed of any Trust property. Accordingly, it was not clearly against the preponderance of the evidence to hold her in contempt for this withdrawal.
Finally, we address the August 2015 withdrawal of $6,707.86. The testimony indicated that Butch deposited a monthly royalty check totaling approximately $10,000 into the Trust and then immediately withdrew $6,707.86-roughly two-thirds of the amount deposited. The two-thirds amount supports the conclusion that Butch took what he believed to be Cindy's and his share from the deposit. Cindy testified that she never received any of this money. The amount withdrawn certainly supports the finding that these funds were withdrawn for Cindy and Butch's benefit and against the circuit court's orders. Secondly, Cindy's testimony on the matter is deemed controverted. Cont'l Express, supra. We hold that it was not clearly against the preponderance of the evidence to find Cindy in contempt for refusing to return these funds to the Trust.
III. The Cross-Appeal
Cindy and Butch executed a mortgage in favor of their attorney for payment of his attorney's fee. In her contempt motion, Deb asked the circuit court to cancel and invalidate the mortgage. The circuit court declined to grant this relief. Deb cross-appeals, arguing that this was reversible error.
On appeal, Deb makes several arguments for reversal: (1) the mortgage was prohibited by the Trust; (2) the mortgage was prohibited by the Trust Code; (3) the mortgage was prohibited by the circuit court's rulings after the jury verdict; (4) the mortgage was prohibited by ethical rules.
We summarily dispose of two of these arguments, namely that the mortgage was prohibited by the Trust Code and ethical rules. Both arguments were raised for the first time in a posttrial motion to reconsider. An issue must be presented to the circuit court at the earliest opportunity to preserve it for appeal. LaFont v. Mooney Mixon , 2010 Ark. 450, at 15, 374 S.W.3d 668, 676. And it is well settled that our court will not consider an argument made for the first time in a posttrial motion. See Lee v. Daniel , 350 Ark. 466, 91 S.W.3d 464 (2002).
*286 Cindy and Butch also claim a third argument-that the mortgage violated the Trust-was not preserved. They correctly identify that the argument was first mentioned in a pleading in the motion for reconsideration. However, at the contempt hearing, Deb presented testimony that supports this argument. She testified that the Trust does not allow assignments and asked that the mortgage be dismissed or nullified on this basis. Her testimony was sufficient to preserve this argument for appeal. Nevertheless, we acknowledge that the relief requested-that the mortgage be declared null and void based on a violation of the Trust-could not properly be granted because the mortgagee, Butch and Cindy's lawyer, was not a party to the action. See Ark. R. Civ. P. 19(a) (2017).
Finally, we direct our attention to whether the circuit court erred by refusing to void the mortgage based on violations of the circuit court's orders. As with Deb's previous argument, we recognize that the relief requested could not be granted without the inclusion of the mortgagee as a party. Additionally, the evidence supports a finding that the mortgage did not dispose of any Trust property in violation of the circuit court's order. We acknowledge that the October 2015 order prohibited the disposal of any Trust property. Still, Butch and Cindy's lawyer represented to the court that his mortgage was subordinate to any judgment. Based on Cindy and Butch's lawyer's representation, the court had a basis to conclude that the mortgage did not dispose of any Trust property. We find on error on this point.
Affirmed on direct appeal; affirmed on cross-appeal.
Gruber, C.J., and Brown, J., agree.

In the interest of clarity, we refer to arguments made by Brewer as being Butch's arguments.